**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1909
_____

UNITED STATES OF AMERICA

v.

JULIUS POSTELL,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2:20-cr-00360-001)
District Judge:  Honorable Nitza I. Quiñones Alejandro
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 8, 2025
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed May 18, 2026)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Julius Postell pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that his conviction is unconstitutional under the Second Amendment of the United States Constitution. For the reasons below, we will affirm.

I.

We write primarily for the parties and so recite only those facts pertinent to our decision. Philadelphia police officers suspected that Postell was engaging in a drug deal, as they observed him outside a gated backyard with a plastic bag in his hand. Postell at first turned toward the officers, but he then walked in another direction and discarded a firearm onto the sidewalk. The officers stopped Postell, recovered the firearm, and verified that Postell had prior felony convictions. After he was arrested, Postell was indicted for violating 18 U.S.C. § 922(g)(1).

Postell first moved to dismiss his indictment, arguing that § 922(g)(1) violated the Second Amendment as applied to him. The District Court denied Postell's motion. Postell then entered into a plea agreement with the Government, which limited any appeal to the denial of his motion to dismiss. The District Court sentenced Postell to sixty-six months of imprisonment. Postell timely appealed.

II.[1]

Postell argues that the Second Amendment prohibits his prosecution under § 922(g)(1), which forbids any individual convicted of an offense punishable by more than a year of imprisonment from possessing firearms. Postell and the Government agree that he is one of "the people" to whom the Second Amendment applies. U.S. Const. amend. II; see Range v. Attorney General ("Range II"), 124 F.4th 218 (3d Cir. 2025) (en banc). An analysis of a Second Amendment challenge proceeds in two steps: (1) whether "the Second Amendment's plain text covers an individual's conduct,"[2] and (2) whether the law "is consistent with the Nation's historical tradition of firearm regulation." N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 24 (2022). Postell relies on this Court's decision in Range v. Attorney General ("Range I"), 69 F.4th 96 (3d Cir. 2023) (en banc),[3] to suggest that our Nation's history and tradition do not support permanently disarming felons who have completed their sentences. But we held that

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review Postell's conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Whether a statute is unconstitutional under the Second Amendment is a question of law reviewed de novo. Lara v. Comm'r Pa. State Police, 125 F.4th 428, 433 n.7 (3d Cir. 2025).

[2] The Government "does not deem it necessary to press the point at this time" that Postell's possession of a firearm to facilitate an attempted drug deal is conduct that the Second Amendment does not protect. Gov't Br. 19 n.8. Like the District Court, we therefore do not consider the issue.

[3] During the interim of this appeal, the Supreme Court granted certiorari, vacated, and remanded in Range I for further consideration in light of United States v. Rahimi, 602 U.S. 680 (2024). Garland v. Range, 144 S. Ct. 2706, 2707 (2024) (mem.). In Range II, this Court came to a similar conclusion as in Range I. We therefore construe Postell's argument relying on Range I to apply equally to Range II.

history and tradition did not support permanently disarming an individual under § 922(g)(1) when the record included evidence of a minor food-stamp fraud conviction from decades prior and did not indicate that he posed a physical danger to others. Id. at 106; accord Range II, 124 F.4th at 232.

Postell's criminal history, by contrast, is recent and substantial. It includes aggravated assault, conspiracy, false imprisonment, drug delivery resulting in death, involuntary manslaughter, possession of a controlled substance with intent to deliver, theft, and many other crimes. Postell cycled in and out of prison for the past three decades as a result of committing these offenses. And unlike in Range, these convictions are "closely associated with physical danger," with some involving direct interpersonal violence. Range II, 124 F.4th at 230; see also United States v. Williams, 113 F.4th 637, 658 (6th Cir. 2024) ("[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question.").

Postell argues that despite his convictions for violent offenses, § 922(g)(1) cannot constitutionally apply to him because "[a] lifetime prohibition is not consistent with this Nation's historical tradition of firearm regulation." Postell Br. 11. Whether that contention is true is not relevant to Postell's as-applied challenge, which is cabined to the particulars of his case. See United States v. Moore, 111 F.4th 266, 272–73 (3d Cir. 2024) ("[A]n as-applied challenge requires us to ask whether a statute's 'application to a particular person under particular circumstances deprived that person of a constitutional right.'" (quoting United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011))).

4

The question properly framed is whether disarming someone whose criminal history is recent and violent less than a year after his imprisonment "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Range II, 124 F.4th at 228 (quoting Bruen, 597 U.S. at 19). The Supreme Court's analysis in Rahimi confirms that the answer is yes. In Rahimi, the Court rejected a Second Amendment challenge to § 922(g)(8)(C)(i), which criminalizes firearm possession by those subject to a court order finding that they "represent[] a credible threat to the physical safety" of an intimate partner or the children of the defendant or his partner. 602 U.S. at 690. The Court pointed to two historical analogues. One was surety regimes, in which magistrates "require[d] individuals suspected of future misbehavior to post a bond." Id. at 695. The other was "going armed" laws, which prohibited menacing others with firearms. Id. at 697. "Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 698.

That same historical tradition justifies Postell's disarmament. Postell, through his extensive criminal history, has shown that he poses "a clear threat of physical violence to another" and "a special danger of misus[ing]" firearms. Id. Postell was recently convicted of multiple dangerous felonies. Disarming individuals in Postell's circumstances, as the District Court concluded, is "consistent with the Nation's historical tradition of firearm regulation." Id. at 689 (quoting Bruen, 597 U.S. at 24).

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

5